Return Date:  November 21, 2012

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x          District Court Docket No.:
                                                                   :
In re:                                                             :
                                                                   :
AMES DEPARTMENT STORES, INC., *et al.*,                            :          Chapter 11
                                                                   :          Case No. 01-42217 (REG)
                                                  *Debtors.*        :          (Jointly Administered)
------------------------------------------------------------------ :
                                                                   :
AMES DEPARTMENT STORES, INC.,                                      :          Adversary Proceeding
                                                  *Plaintiff,*     :          No. 06-01890 (REG)
               – against –                                         :
                                                                   :
LUMBERMENS MUTUAL CASUALTY COMPANY,                                :
                                                  *Defendant.*      :
------------------------------------------------------------------ x


**(CORRECTED)**
**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION TO WITHDRAW THE REFERENCE WITH RESPECT**
**TO THIS ADVERSARY PROCEEDING FROM THE BANKRUPTCY**
**COURT UNDER 28 U.S.C. §157(d) & BANKRUPTCY RULE 5011**


**TORRE, LENTZ, GAMELL, GARY**
**& RITTMASTER, LLP**
*Attorneys for Defendant*
100 Jericho Quadrangle, Suite 309
Jericho, New York  11753
Tel.:  (516) 240-8900
          Mark S. Gamell, Esq.
          Robert Beau Leonard, Esq.

TABLE OF CONTENTS

*Page*

THE RELIEF REQUESTED BY THIS MOTION ................................................................... 1

FACTUAL BACKGROUND AND PRIOR PROCEEDINGS................................................. 3

Lumbermens' Surety Bond On Behalf of Ames, Travelers' Claim, And The
Lumbermens/Travelers Settlement ................................................................................. 3

The Adversary Proceeding, Ames' Settlement with Travelers,
and the 2009 Amendment of the Adversary Complaint................................................. 6

The Order of Rehabilitation and Subsequent Proceedings in the Bankruptcy Court
Leading to this Motion ................................................................................................... 9

Ames' Jurisdictional Motion and Permission to Move
to Withdraw the Reference .......................................................................................... 11

POINT I
THIS PROCEEDING MUST BE WITHDRAWN
FROM BANKRUPTCY COURT ........................................................................................ 14

    A.    The McCarran-Ferguson Statutory Framework .............................................. 14

    B.    This Adversary Proceeding Presents Serious Issues Regarding the Interplay
            Between The McCarran-Ferguson Act,  State Insurance Regulation, and the
            Bankruptcy Code .......................................................................................... 15

    C.    Withdrawal of the Reference Applies to both "Core"
            and "Non-Core" Matters................................................................................. 17

    D.    Ames' Jurisdictional Motion Itself Admits
            McCarran-Ferguson Is Implicated................................................................. 19

POINT II
LUMBERMENS HAS FILED THIS MOTION IN A TIMELY MANNER........................ 19

CONCLUSION.................................................................................................................... 20

i

TABLE OF AUTHORITIES

*Decisions*

*American Telephone & Telegraph Co. v. Chateaugay Corp.,*
   88 Bankr. 581 (S.D.N.Y. 1988) ................................................................................ 18

*Cardali v. Gentile (In re Cardali),*
   2010 Bankr. LEXIS 4113 at *32-33 (Bankr. S.D.N.Y. Nov. 18, 2010) ............................ 18

*Carter Day Indus. v. United States EPA (In re Combustion Equip. Assocs.),*
   67 B.R. 709 (S.D.N.Y. 1986),
   *aff'd,* 838 F.2d 35 (2d Cir. 1988) ........................................................................ 18

*Humana Inc. v. Forsyth,*
   525 U.S. 299 (1999) ........................................................................................ 14

*In re Advanced Cellular Systems,*
   235 B.R. 713 (Bankr. P.R. 1999) ........................................................................ 17

*In re Amwest Ins. Group, Inc.,*
   285 B.R. 447 (Bankr. C. D. Cal. 2002) ................................................................ 17

*In re Medical Care Management Company,*
   361 B.R. 863 (Bankr. M.D. Tenn. 2003) .............................................................. 17

*In re MF Global Holdings Ltd.,*
   469 B.R. 177 at n. 17 (Bankr. S.D.N.Y. 2012) ...................................................... 17

*In re Motors Liquidation Co.,*
   457 B.R. 276 (Bankr. S.D.N.Y. 2011) ................................................................ 18

*Kirschner v. Agoglia,*
   476 B.R. 75, 2012 U.S. Dist. Lexis 651348 at *6 - *11 (S.D.N.Y. 2012) ...................... 18

*Laborers' Pension Trust Fund-Detroit & Vicinity v. Kiefer (In re Kiefer),*
   276 B.R. 196 ( E.D. Mich. 2002) ...................................................................... 18

*Logan v. Credit General Ins. Co. (In re PRS Group, Inc.),*
   294 B.R. 609 (Bankr. D. Del. 2003),
   *aff'd* 2005 U.S. Dist. Lexis 22611 (D. Del. March 31, 2005) .................................. 17

*Mishkin v. Ageloff,*
   220 B.R. 784 (S.D.N.Y. 1998) .......................................................................... 18

*New York v. Exxon Corp.,*
  932 F.2d 1020 (2d Cir. 1991) ................................................................ 17

*Parmalat Capital Finance Ltd. v. Bank of America Corp.,*
  671 F.3d 261 (2d Cir. 2012) ................................................................. 18

*Pension Benefit Guaranty Corp. v. The LTV Corp.,*
  86 Bankr. 33 (S.D.N.Y. 1987) .............................................................. 18

*Prudential Ins. Co. v. Benjamin,*
  328 U.S. 408 (1946) ............................................................................. 14

*Stern v. Marshall,*
  564 U.S. 2 (2011) ........................................................................... 18, 19

*U.S. Dep't of Treasury v. Fabe,*
  508 U.S. 491 (1993) ............................................................................. 15

### <u>Statutes</u>

11 U.S.C. §105 ........................................................................................... 8

11 U.S.C. §362 ........................................................................................... 8

11 U.S.C. §542 ........................................................................................... 8

11 U.S.C. §1107 ......................................................................................... 8

15 U.S.C. §§1011 – 1015 ...................................................................... 1, 14

15 U.S.C. §1012 ....................................................................................... 15

28 U.S.C. §157(d) ........................................ 1, 2, 10, 11, 12, 14, 17, 18, 19, 20

28 U.S.C. §1334 ................................................................................. 13, 18

## THE RELIEF REQUESTED BY THIS MOTION

Pursuant to permission granted by the Bankruptcy Court, Andrew Boron, Director of Insurance of the State of Illinois, as statutory and court affirmed Receiver of Lumbermens Mutual Casualty Company, in Rehabilitation ("the Rehabilitator"), moves pursuant to 28 U.S.C. §157(d) for the withdrawal of the District Court's reference of this Adversary Proceeding to the Bankruptcy Court.  Withdrawal of the proceeding is mandatory because, in the words of 28 U.S.C. §157(d), "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  In this case, that law is 15 U.S.C. §§1011-1015 (the "McCarran-Ferguson Act" or "McCarran-Ferguson").

On July 2, 2012, pursuant to the Illinois Insurance Code, an Agreed Order of Rehabilitation against Lumbermens ("Rehabilitation Order") was entered in the Circuit Court of Cook County, Illinois, pursuant to which the Rehabilitator was appointed and the rehabilitation estate of Lumbermens was created.  The Rehabilitation Order contains, among other things, an anti-suit injunction barring prosecution of all litigation against Lumbermens except in the Illinois State Court.

Upon learning of the Rehabilitation Order, Ames Department Stores, Inc., a debtor and the plaintiff in this Adversary Proceeding against Lumbermens, sought to move before the Bankruptcy Court for a declaration of the Bankruptcy Court's exclusive jurisdiction over the debtors' claims against Lumbermens, including debtors' claim that an $8 million trust account established by Lumbermens in 2003 with its own funds at The Bank of New York for the

1

benefit of Travelers Indemnity Company, is a fund over which the Bankruptcy Court has jurisdiction *in rem*.

Under The McCarran-Ferguson Act, state laws regulating the "business of insurance" (which has been held to include the rehabilitation of insolvent insurance companies and the distribution of their assets) "reverse preempt" federal laws that are inconsistent with such state insurance laws (except as to anti-trust laws and any federal law that "specifically relates to the business of insurance"). McCarran-Ferguson is plainly a statute "regulating organizations or activities affecting interstate commerce", and the Bankruptcy Code plainly does not specifically relate to the business of insurance.

The Rehabilitator contends that all claims against Lumbermens or the Rehabilitation estate (including any claims relating to the $8 million of Lumbermens' trust funds) must be heard in the Illinois State Court under the terms provided in the Rehabilitation Order and subject to the Illinois Insurance Code, because McCarran-Ferguson "reverse prempts" the Bankruptcy Court where claims against the Rehabilitation estate or regarding its property are concerned.

Accordingly, resolution of Ames' motion for a declaration of exclusive jurisdiction by the Bankruptcy Court presents a serious issue of conflict between Bankruptcy Code and the McCarran-Ferguson Act. McCarran-Ferguson grants primacy over federal acts such as the Bankruptcy Code to the state regulation of the business of insurance in matters such as the rehabilitation and liquidation of insolvent insurers. Accordingly, withdrawal of the District Court's reference to the Bankruptcy Court is mandatory in such circumstances pursuant to 28 U.S.C. §157(d), which states in relevant part:

2

> The district court shall, on timely motion of a party, so withdraw
> a proceeding if the court determines that resolution of the proceeding
> requires consideration of both title 11 and other laws of the United States
> regulating organizations or activities affecting interstate commerce.

Pursuant to the directive of the Bankruptcy Court in granting the Rehabilitator permission to make this motion, Ames' underlying jurisdictional motion and the Rehabilitator's opposition and cross-motion with respect thereto will continue to be briefed by the parties while this motion to withdraw the reference is pending, so that the jurisdictional motions can be determined by whichever court this District Court determines should properly hear them. Accordingly, the merits of the jurisdictional dispute, as well as the merits of the Adversary Proceeding itself, will only be dealt with here to the extent needed for this Court to understand the procedural and factual background that justifies withdrawal of the reference. The Rehabilitator fully reserves all of his arguments as to the lack of jurisdiction of the Bankruptcy Court to hear the Adversary Proceeding originally, the "reverse preemption/divestiture" by virtue of McCarran-Ferguson and the Rehabilitation Order of any jurisdiction the Bankruptcy Court might have originally had, as well as to the merits of the claims against Lumbermens in the Adversary Proceeding itself.

The docket as of October 18, 2012 for the Adversary Proceeding as to which withdrawal of the reference is sought is attached to the accompanying affidavit of Mark S. Gamell, sworn to October 19, 2012 (hereafter "Gamell Aff.") as Exhibit A.

## FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

Lumbermens' Surety Bond On Behalf of Ames,
Travelers' Claim, And The Lumbermens/Travelers Settlement

The kernel of operative facts underlying the Adversary Proceeding involves a $14.35 million surety bond Lumbermens issued on November 1, 2000, as surety, on behalf of Ames,

3

as principal, and in favor of Travelers Indemnity Company (Travelers), as obligee (the "Bond," Gamell Aff. Ex. B).  The Bond stated, among other things, that "The Principal [*i.e.*, Ames] shall not at any time have any rights or property interests in this Bond, the Bond Collateral or other proceeds of this Bond."

In connection with the issuance of the Bond, Ames executed a General Agreement of Indemnity dated July 26, 2000, and executed September 26, 2000 (the "Indemnity Agreement," Gamell Aff. Ex. C.).  The Indemnity Agreement stated, among other things, that Lumbermens, as surety, had the exclusive right to determine how claims against its Bonds should be "compromised, resisted, defended, tried or appealed," and the surety's decision was agreed to be "final and binding upon the Indemnitors." (*see* Indemnity Agreement, paragraph "5", "Surety's Rights Re: Claims.")

Approximately ten months after the Bond had been issued, on August 20, 2001, Ames filed its petition for bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York (see Southern District Bankruptcy Ch. 11 Case No. 01-42217 (REG).

On May 21, 2003, a demand for payment of the entire penal sum of the Bond was sent by Travelers, the obligee of the Bond, to Lumbermens (the "Demand Letter", Gamell Aff. Ex. D.)  Travelers' demand was not promptly resolved as between Lumbermens and Travelers, and on June 4, 2003, Travelers commenced an action in the United States District Court for the District of Connecticut against Lumbermens, seeking recovery of the Bond's full penal sum of $14.35 million (the "Travelers Action," Gamell Aff. Ex. E.).

On November 4, 2003, Travelers and Lumbermens executed a letter agreement that resolved the Travelers Action (the "Letter Agreement," Gamell Aff. Ex. F)  Among the terms

4

of the Letter Agreement was Lumbermens' agreement to place $8 million into a Trust Account for the sole benefit of Travelers, to be held at The Bank of New York.  Travelers, in turn, agreed that it would look first to two letters of credit that Ames had posted with Travelers as collateral for Ames' obligations to Travelers under various insurance programs, before Travelers would look to the funds Lumbermens would place in trust or to the remaining Bond penal sum to pay Ames' obligations.  Whether any of the terms of the Letter Agreement infringed upon any cognizable, existing or valid rights or interests of Ames is one of the issues involved in the Adversary Proceeding, and the arguments of the parties and relevant facts on those points developed in discovery will not be set forth here.

On or about November 1, 2003, Lumbermens, as Grantor, Travelers, as Beneficiary, and The Bank of New York, as Trustee, executed the Trust Agreement required by the Letter Agreement, and the trust was thereafter funded with the $8 million deposit that had been agreed to between Travelers and Lumbermens (see "Trust Agreement" or "Trust," Gamell Aff. Ex. G).

Accordingly, the central core of operative documents and transactions underlying the Adversary Proceeding involve "state law" or "private rights" matters.  It is the $8 million on deposit in the Trust ("Trust Monies") that the Rehabilitator asserts is property of the Lumbermens Rehabilitation estate, and which Ames asserts is property of the Ames estate over which the Bankruptcy Court has jurisdiction *in rem*.

The Adversary Proceeding,
Ames' Settlement with Travelers, and the
2009 Amendment of the Adversary Complaint

Three years after the execution of the Letter Agreement and the establishment of the

Trust, Ames commenced an adversary proceeding in the Bankruptcy Court against Travelers

and Lumbermens.  The Adversary Complaint filed on November 3, 2006 (Gamell Aff. Ex. H)

had as its central thrust the refusal of Travelers to establish a liquidated sum for the total

obligations owed by Ames to Travelers.  However, in its two claims for relief against both

Lumbermens and Travelers, Ames requested a declaratory judgment that Ames' obligations to

Travelers should be satisfied first from the Bond prior to any demand by Travelers on the

letters of credit (Second Claim for Relief), contrary to the provisions of the Letter Agreement

that had settled the Travelers Action.  Ames sought essentially the same relief in its Third

Claim for Relief under the equitable common law doctrine of "marshalling."

On January 9, 2007, Lumbermens filed its Answer and Counterclaims to the Adversary

Complaint (Gamell Aff. Ex. I).  The first three affirmative defenses Lumbermens asserted

were that the bankruptcy court lacked subject matter jurisdiction of the disputes, that the

proceedings were "not core," and that the mandate of the Bankruptcy Court to hear the dispute

should be withdrawn.  In its Answer to Counterclaims filed on February 1, 2007 (Gamell Aff.

Ex. J), Ames asserted as affirmative defenses that it disagreed with Lumbermens' position as

to jurisdiction (see Ames' Second Affirmative Defense, page 5).  Accordingly, the underlying

dispute over whether the bankruptcy court originally had jurisdiction to hear this Adversary

Proceeding has been pleaded and known from the outset.

On December 15, 2008, the Bankruptcy Court entered a "Settlement Order" ("2008 Settlement Order") in the main bankruptcy case setting forth the terms under which Ames' Adversary Proceeding as against Travelers, and Travelers' Proof of Claim in the Ames' bankruptcy, would be settled (Gamell Aff. Ex. K).  The complicated settlement of Ames motion to approve its settlement with Travelers, which originally sought to have the settlement paid out of the Trust Monies or from the Bond, and Lumbermens' objections to the motion, was embodied in the Settlement Order.  Relevant to this motion for withdrawal of the reference is the decretal paragraph making clear that the approval of the Ames/Travelers settlement and of its payment out of the proceeds of the remaining letter of credit Travelers held, did not alter or affect any of Lumbermens' defenses or positions in the Adversary Proceeding or otherwise (see pp.3-4). Also of relevance is the decretal paragraph ordering that Lumbermens not commence any action or proceeding in any other court or venue that concerns the Letter Agreement, the Trust Monies, the Bond or any documents or transactions related thereto, prior to Lumbermens' giving forty-five days' notice to counsel for Ames (see second full decretal paragraph, p. 7).  This paragraph acknowledged Lumbermens' position that the bankruptcy court lacked jurisdiction to hear the Adversary Proceeding as against Lumbermens, but provided Ames with a notice period so that it could seek relief, should it choose to do so, from the Bankruptcy Court if Lumbermens commenced an action in another court (*e.g.*, against the Bank of New York to seek return of the Trust Monies).

With Travelers removed from the Adversary Proceeding, Ames served its Second Amended Complaint, this time solely against Lumbermens and related entities, dated March 31, 2009 (Gamell Aff. Ex. L).  This marked the true beginning of the Adversary Proceeding as against Lumbermens, as prior to that time the focus of the proceedings had been on the

Travelers issues, and related Bond and Letter of Credit collateral issues, that were resolved in the Settlement Order.  Ames' Second Amended Complaint is still the operative pleading in the Adversary Proceeding (although the customs bond related claims have been dismissed by stipulation), and seven claims against Lumbermens are set forth that remain: "Breach of Contract Pursuant to Applicable State Law" (first claim for relief), "Breach of the Implied Covenant of Good Faith and Fair Dealing Pursuant to 11 U.S.C. §105 and Applicable State Law" (second claim for relief), "Unjust Enrichment Pursuant to 11 U.S.C. §105 and Applicable State Law" (third claim for relief), "Violation of the Automatic Stay and Contempt" with respect to the Bond and the Letter Agreement "Pursuant to 11 U.S.C. §§105 and 362(a) (fourth claim for relief), "Declaratory Judgment and Direction" that the Trust Monies be released to Ames (fifth claim for relief), "Marshalling or Targeted Use of Assets" pursuant to 11 U.S.C. §§ 1107 and 105 (sixth claim for relief) and "Equitable Subordination" of Lumbermens claims in the Ames bankruptcy, based upon Lumbermens' alleged inequitable conduct (tenth claim for relief).

There was a claim asserted for "turnover" under 11 U.S.C. § 542, but that related solely to collateral that was held by Lumbermens' affiliate for customs bonds issued for Ames, and that claim has been dismissed as part of a stipulated settlement.  The Rehabilitator contends that while 11 U.S.C. 105 is cited repeatedly in the Adversary Proceeding, the only claim seeking recovery of funds or damages against Lumbermens that arises under the Bankruptcy Code itself is the claim for alleged violation of the automatic stay (fourth claim for relief), which the Rehabilitator contends is wholly without merit.

Lumbermens' Answer And Amended Counterclaim, etc. to the Second Amended Complaint (Gamell Aff. Ex. M) once again preserved as its first three affirmative defenses

8

Lumbermens' position that the bankruptcy court lacked subject matter jurisdiction, that the proceedings were not core, and that the reference to the bankruptcy court should be withdrawn (see First, Second and Third Affirmative Defenses, p. 8).[1]

> The Order of Rehabilitation and Subsequent
> Proceedings in the Bankruptcy Court Leading to this Motion

Following the Second Amendment of the Adversary Complaint in 2009, the parties engaged in discovery, which was completed in 2011. Efforts at preparing a pretrial order were underway when the firm that had been Ames' bankruptcy counsel, Dewey LeBoeuf, dissolved. New counsel were eventually substituted for Ames, and a new schedule for completion of the pretrial order and a trial commencement date of October 30, 2012 had just been set when the Rehabilitation Order was entered against Lumbermens in the Illinois State Court on July 2, 2012.

Upon learning of the Rehabilitation Order, counsel for Lumbermens filed it with a covering "Notice of Entry" in the Adversary Proceeding on July 6, 2012 (Gamell Aff. Ex. N). Ames almost immediately sought emergency relief to have the bankruptcy court declare its own "exclusive" jurisdiction over the Adversary Proceeding and the Trust Monies, which resulted in a series of telephonic conferences with Bankruptcy Judge Gerber on the record, held on July 11, 2012, July 18, 2012, and July 30, 2012 (Transcripts attached as Exhibits O, P and Q, respectively, to the Gamell Affidavit). Among the arguments raised were whether the filing of the Rehabilitation Order was an effort to divest the Bankruptcy Court of jurisdiction, and whether that order was a violation of the provision of the 2008 Settlement Order requiring that Lumbermens give Ames' counsel 45-days' notice before seeking relief regarding the

---

[1] Lumbermens has since waived its Jury Demand.

Bond, the Trust Monies, or the Letter Agreement in another court (see, e.g., July 11, 2012 Transcript, Gamell Aff. Ex. O, which further underlines the serious issues regarding conflict between McCarran-Ferguson's declaration of the primacy of state law insurance regulatory schemes and the Bankruptcy Code presented by this matter).

As a result of the three conferences with Judge Gerber, a "Stipulation And Order Regarding 'Standstill Agreement'" was entered on August 1, 2012 ("Standstill Order," Gamell Aff. Ex. R).  The "Standstill Order" essentially provided the Rehabilitator with 45 days in which to become familiar with the Adversary Proceeding and study its jurisdictional posture, at the conclusion of which the Rehabilitator was to convey his position as to jurisdiction in writing to counsel for Ames.  Ames would then have 45 days in which to seek relief from the Bankruptcy Court, with the Rehabilitator limited to seeking cross-relief in that court.  The Standstill Order expressly reserved all rights, claims and defenses of both parties (Standstill Order, paragraph "8").

On September 14, 2012, as required by the Standstill Order, the Rehabilitator presented its written position as to jurisdiction to Ames' Counsel (Gamell Aff. Ex. S).  The twelve page letter asserted, in essence, that withdrawal of the reference was mandatory under 28 U.S.C. §157(d) in light of the involvement of the Rehabilitator's claim of primacy under McCarran-Ferguson, but should be withdrawn permissively in any event since the Bankruptcy Court lacked jurisdiction to finally determine the claims against Lumbermens asserted in the Adversary Proceeding; that the Bankruptcy Court did not have, and never had, jurisdiction over the Trust Monies; and that the Adversary Proceeding should be heard in Illinois State Court pursuant to the Rehabilitation Order.

10

Ames' Jurisdictional Motion and
Permission to Move to Withdraw the Reference

Within hours after receiving the Rehabilitator's jurisdictional position statement, Ames

filed a new motion in the Bankruptcy Court seeking a declaration of "exclusive" jurisdiction in

the bankruptcy court over the Trust Monies and the Adversary Proceeding, and seeking to

enjoin the Rehabilitator from "interfering" with the Trust Monies ("Ames Jurisdictional

Motion," Gamell Aff. Ex. T (without exhibits)).  While the Rehabilitator finds the Ames

Jurisdictional Motion to be replete with misstatements of facts and law, and disagrees with the

motion on the merits, the motion is attached here as it is that motion (or the version of it which

Ames is to refile in the near future), and the Rehabilitator's cross-motion in response to it

seeking abstention and/or dismissal based upon lack of jurisdiction and/or divestiture of

jurisdiction, that should be heard and determined by the District Court pursuant to the

withdrawal of the reference that is sought in this motion.  By letter to the Bankruptcy Court

dated September 21, 2012, the Rehabilitator's counsel requested relief from the Standstill

Order to permit the filing of a motion to withdraw the reference under 28 U.S.C. §157(d) due

to the implications of the McCarran-Ferguson Act (Gamell Aff. Ex. U), since the motion to

withdraw the reference was not permitted under the Standstill Order as written.  The letter in

response from Ames' counsel argued, among other things, that the Bankruptcy Code

represented "federal interests" that should outweigh insurance regulation, and the McCarran-

Ferguson Act should not preempt the Bankruptcy Code (see Gamell Aff. Ex. V, p. 6).

In an on-the-record telephonic hearing before the Bankruptcy Court held on October 1,

2012, Bankruptcy Judge Gerber ordered that the Rehabilitator would be given relief from the

Standstill Order to move for withdrawal of the reference under 28 U.S.C. §157(d) (Transcript

11

attached as Exhibit W to Gamell Aff., Tr. pp. 16-20). Among the arguments made by Ames in contesting the Rehabilitator's request were: (a) the Rehabilitator should be bound by prior agreements entered into by Lumbermens in the bankruptcy proceedings (see Tr. pp. 10-11), (b) because the Rehabilitator is also the Director of Insurance of Illinois, the Rehabilitator should be charged with having already known of 28 U.S.C. §157(d) and the McCarran-Ferguson Act and been charged with having raised those issues earlier (Tr. pp. 10-11, 15), and (c) because Lumbermens was in "supervision" for several years prior to the order of rehabilitation, the Rehabilitator should be charged with whatever knowledge the Illinois Department of Insurance might have had regarding the Ames bankruptcy proceedings during the "supervision" period, which knowledge Ames raised to challenge the timeliness of Lumbermens' motion under Section 157(d) and to argue "waiver" (Tr. pp. 11-12).

Accordingly, Ames arguments in the October 1, 2012 telephonic hearing demonstrated that several of its objections to withdrawal of the reference are based upon arguments regarding the powers, duties and obligations of state insurance regulators and receivers in contrast with the powers of the Bankruptcy Court, including (for example) whether the Illinois Director of Insurance, as rehabilitator, is or is not a distinct and separate legal entity from the Illinois Director of Insurance, as regulator. Clearly, these are the very types of issues that 28 U.S.C. §157(d) mandates are not to be determined by a specialty, Article I court such as the Bankruptcy Court, as they involve matters of federal and state comity and national regulatory systems distinct from the bankruptcy system. The District Court must withdraw the reference and decide these issues in the context of the determination of the jurisdictional dispute over this Adversary Proceeding.

Ames has informed counsel for the Rehabilitator of its intention to withdraw the Ames Jurisdictional Motion and refile an expanded version, as suggested by Bankruptcy Judge Gerber in the October 1, 2012 telephonic hearing.  While Lumbermens has not seen the revised motion, Lumbermens' current intention is to oppose the motion, and to cross-move to have the District Court and/or the Bankruptcy Court abstain from hearing and deciding this Adversary Proceeding under 28 U.S.C. §1334 and the McCarran-Ferguson Act, in deference to the state law insurance regulatory scheme applicable to the current dispute (such as regarding (i) the settlement of the insurance-related claim that was submitted by Bond that is at the center of this Adversary Proceeding dispute, and (ii) the establishment of the Trust by Lumbermens in 2003 for the sole benefit of Travelers pursuant to that settlement, and (iii) the Illinois Insurance Code provisions governing the collection and distribution of Lumbermens' assets by its statutory rehabilitator), and/or for dismissal of the Adversary Proceeding based upon lack of jurisdiction and/or based upon divestiture of jurisdiction due to the reverse preemption of the McCarran-Ferguson Act, which grants primacy to the Rehabilitator's Illinois State Court proceedings.  In addition, to the extent that there is any dispute as to what property rights, if any, Ames has in the Trust Monies, the Rehabilitator will request that abstention, lift-stay and other relief be afforded so that the determination of property rights — a state law insurance regulatory issue — can be made by the Illinois State Courts, as required under the Rehabilitation Order.

## POINT I
## THIS PROCEEDING MUST BE WITHDRAWN FROM BANKRUPTCY COURT

**A.      The McCarran-Ferguson Statutory Framework**

This motion seeks a single item of relief, withdrawal of this Adversary Proceeding,

including Ames' Jurisdictional Motion, from the Bankruptcy Court, under the mandatory

directive of 28 U.S.C. §157(d), stating:

> The district court shall, on timely motion of a party, so withdraw a
> proceeding if the court determines that resolution of the proceeding
> requires consideration of both title 11 and other laws of the United States
> regulating organizations or activities affecting interstate commerce.

The McCarran-Ferguson Act (15 U.S.C. §§1011-1015), is such a statute "regulating

organizations or activities affecting interstate commerce." See, *e.g.*, *Humana Inc. v. Forsyth*,

525 U.S. 299, 306 (1999); *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 431 (1946).  As

explained by the U. S. Supreme Court in *Humana,* the McCarran-Ferguson Act was

prompted by the Supreme Court's holding in 1944 that insurance companies doing business

across state lines were engaged in interstate commerce. *Id.* at 306.  In response, Congress

passed the McCarran-Ferguson Act, which secures to the States the regulation of the business

of insurance.  Section 2(b) of the McCarran-Ferguson Act ensures that federal statutes not

specifically identified in the Act or enacted subsequently would not automatically override

state insurance regulation, and thus "precludes application of a federal statute in face of state

law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal

measure does not 'specifically relate to the business of insurance' and would 'invalidate,

impair, or supersede' the State's law." *Id.* at 306-307.

The McCarran-Ferguson Act states, in part, as follows, at 15 U.S.C. §1012:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance [except certain anti-trust laws].

**B.     This Adversary Proceeding Presents Serious Issues Regarding the Interplay Between The McCarran-Ferguson Act, State Insurance Regulation, and the Bankruptcy Code**

In *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 505-506 (1993), the Supreme Court reviewed the history of the McCarran-Ferguson Act and stated, "The primary purpose of a statute that distributes the insolvent insurer's assets to policyholders in preference to other creditors is identical to the primary purpose of the insurance company itself:  the payment of claims made against policies."  In light of *Fabe*, there can be no doubt that McCarran-Ferguson is a statute "regulating organizations or activities affecting interstate commerce", and that the Illinois Insurance Code provisions at issue regulate the business of insurance within the meaning of McCarran-Ferguson.

The narrative of the jurisdictional posture of this Adversary Proceeding since the July 2, 2012 entry in Illinois of the Rehabilitation Order, and the arguments being made by Ames to challenge the Rehabilitator's rights and position, leave no doubt that resolution of this Adversary Proceeding "requires consideration of both title 11 and [McCarran-Ferguson]." Among other things, Ames is directly challenging the Rehabilitation Order and the jurisdiction of the Illinois State Court, and the Illinois Insurance Code under which it was issued, which under the McCarran-Ferguson Act "reverse preempts" the Bankruptcy Code in relation to the Trust Monies and the litigation, quantification and collection of Ames' alleged claims against Lumbermens, in Rehabilitation.  The Rehabilitation Order enjoins all litigants

15

and other claimants against Lumbermens (including Ames) from pursuing collection of any

claims against Lumbermens, and from interfering with the Rehabilitator's administration of

any assets of Lumbermens (except in the Illinois State Court insolvency proceedings).

The Rehabilitation process, the powers of the Director of Insurance, as Rehabilitator,

and the power of the Illinois Court to issue injunctions such as that issued in the

Rehabilitation Order, are all part of the comprehensive insurance regulatory scheme set forth

in the Illinois Insurance Code (*see, e.g.,* 215 ILCS 5/189, 191 and 192). The Ames

Jurisdictional Motion directly challenges the right of the Illinois State Court to issue an

effective anti-suit injunction under the Illinois Insurance Code. It also urges the Bankruptcy

Court to exercise "*in rem* jurisdiction" over the $8,000,000 in Trust Monies described above,

which constitute property of the Lumbermens rehabilitation estate which the Illinois Code

and the Rehabilitation Order set over to the Rehabilitator. Further, the Illinois statute and

Rehabilitation Order require that property disputes with regard to the Rehabilitation be

determined in the Illinois State Court. Thus, the Ames Jurisdictional Motion, without more,

is ample evidence that this proceeding cannot be resolved without considering both "title 11"

(the Bankruptcy Code) and the McCarran-Ferguson Act, together with the Illinois Insurance

Code.

While Ames asserts that "bankruptcy courts have exclusive jurisdiction over estate

property," bankruptcy and district courts have held to the contrary where interests in property

are to be determined pursuant to a state statutory scheme for the regulation of the business of

insurance. In such cases, the state insurance law "reverse preempts" the Bankruptcy Code,

and the provisions of the state insurance law take precedence and must be followed and

enforced despite potentially contrary provisions of the Bankruptcy Code, including

circumstances where property rights are disputed between debtors and state insurance liquidators. *Logan v. Credit General Ins. Co. (In Re: PRS Insurance Group, Inc.)*, 294 B.R. 609 (Bankr.D.Del. 2003), *aff'd* 2005 U.S. Dist. Lexis 22611 (D.Del. 2005); *In re MF Global Holdings Ltd.*, 469 B.R. 177 at n. 17 (Bankr. S.D.N.Y. 2012); *In re Medical Care Management Company*, 361 B.R. 863 (Bankr. M.D. Tenn. 2003); *In re Amwest Ins. Group, Inc.*, 285 B.R. 447 (Bankr. C. D. Cal. 2002); *In re Advanced Cellular Systems*, 235 B.R. 713 (Bankr. P.R. 1999).

The foregoing cases are cited not to argue the merits of the jurisdictional issue, but to demonstrate that balancing the interests of debtors under the Bankruptcy Code and state insurance liquidators and rehabilitators requires an in-depth exploration of McCarran-Ferguson and the state insurance regulatory scheme involved, a serious issue that 28 U.S.C. §157(d) requires be heard and determined by the United States District Court.

**C.    Withdrawal of the Reference Applies to both "Core" and "Non-Core" Matters**

The mandatory withdrawal of the reference required by Section 157(d) under these circumstances applies to both core and non-core issues.  As the Second Circuit stated in *New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991):

> Withdrawal would not depend, as Refinemet seems to think, on whether the statutory interpretation fell within the bankruptcy court's "core" or "non-core" jurisdiction. See 28 U.S.C. §157(b)(1), (2) and (c)(1).  Determination of the nature and extent of Refinemet's liability to the City is indeed a "core" matter, since it relates to "allowance or disallowance of claims against the estate or exemptions from property of the estate . . . for the purposes of confirming a plan under chapter 11. 28 U.S.C. §157(b)(2)(B).  Yet matters within this "core" jurisdiction, upon timely motion, must be withdrawn under §157(d) if they require the bankruptcy court to substantially interpret federal statutes which affect interstate commerce.

Other decisions invoking 28 U.S.C. §157(d) where federal regulatory schemes other than McCarran-Ferguson were involved, support this point. *Mishkin v. Ageloff*, 220 B.R. 784, 795 (S.D.N.Y. 1998) (SIPC issues); *See Carter Day Indus. v. United States EPA (In re Combustion Equip. Assocs.)*, 67 B.R. 709, 713 (S.D.N.Y. 1986), *aff'd*, 838 F.2d 35 (2d Cir. 1988) (CERCLA issues); *Cf. American Telephone & Telegraph Co. v. Chateaugay Corp.*, 88 Bankr. 581 (S.D.N.Y. 1988) (CERCLA issues); *Pension Benefit Guaranty Corp. v. The LTV Corp.*, 86 Bankr. 33, 38-39 (S.D.N.Y. 1987) (ERISA issues); *Laborers' Pension Trust Fund-Detroit & Vicinity v. Kiefer (In re Kiefer)*, 276 B.R. 196 (E.D. Mich. 2002) (ERISA issues).

In the circumstances, the reference should be withdrawn whether the issues in the Adversary Proceeding involve "core" or "non-core" matters.  As was observed in *Stern v. Marshall*, 564 U.S. 2 (2011), the current bankruptcy system "permits the district court to withdraw from the bankruptcy court any referred case, proceeding, or part thereof," and "Section 1334(c)(1) similarly provides that bankruptcy courts may abstain from hearing any proceeding, including core matters, 'in the interest of comity with State courts or respect for State law.'"  *Cf., Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 671 F.3d 261 (2d Cir. 2012);  *In re Motors Liquidation Co.*, 457 B.R. 276, 288 (Bankr. S.D.N.Y. 2011) (Gerber, J.).  See also *Cardali v. Gentile (In re Cardali)*, 2010 Bankr. LEXIS 4113 at *32-33 (Bankr. S.D.N.Y. Nov. 18, 2010) ("As the Second Circuit observed in *United States Lines*, it cannot be that all proceedings involving property of the estate are core; such an approach would create an exception to *Marathon* that would swallow the rule.").  Where jurisdiction itself is concerned, the "core" versus "non-core" distinction falls following the reasoning of *Marshall v. Stern.  See Kirschner v. Agoglia*, 476 B.R. 75, 2012 U.S. Dist. Lexis 651348 at

*6 - *11 (S.D.N.Y. 2012; Rakoff, J.) ("In *Stern v. Marshall,* the Supreme Court held that the state law tortious interference counterclaim before it could be finally adjudicated only by an Article III court and not by the bankruptcy court, even though the counterclaim was a 'core' proceeding under §157.").

### D.   Ames' Jurisdictional Motion Itself Admits McCarran-Ferguson Is Implicated

Ames' Jurisdictional Motion cites and discusses the McCarran-Ferguson Act itself, arguing that the Act should be "read narrowly" and that it does not override the provisions of the Bankruptcy Code (see Gamell Aff. Ex. T, pp. 16 – 18).  While the Rehabilitator obviously disagrees with Ames' arguments and position in this regard, that is not to be argued here; the point is that even Ames' own motion papers admit that the deciding court will be called upon to balance the interests and reach of the McCarran-Ferguson Act against the Bankruptcy Code – the very type of analysis and ruling that 28 U.S.C. §157(d) mandates is to be performed by the United States District Court by withdrawing the reference from the Bankruptcy Code.

Accordingly, Lumbermens' motion under §157(d) to withdraw this Adversary Proceeding and the Ames Jurisdictional Motion from the Bankruptcy Court should be granted.

### POINT II
### LUMBERMENS HAS FILED THIS MOTION IN A TIMELY MANNER

There can be no genuine issue as to whether this motion by Lumbermens has been filed in a timely manner.  The narrative of the events in the Adversary Proceeding since the Rehabilitation Order was filed on July 2, 2012, including the numerous conferences with the

Bankruptcy Court on the record (Gamell Aff. Exs. O, P and Q), the Standstill Order (Gamell Aff. Ex. R), the letter applying for permission to make the instant motion (Gamell Aff. Ex. U) and the October 1, 2012 order of the Bankruptcy Court permitting this motion to be made (Gamell Aff. Ex. W) all show diligence under the circumstances on the part of the Rehabilitator.  The Bankruptcy Court had suggested, in the July 18, 2012 hearing, that it was "only fair" to provide the Rehabilitator a reasonable period to "study the matter and get up to speed on it." (see Gamell Aff. Ex. P, Tr. p. 28).  The Rehabilitator cannot be held to have been tardy or not to have acted diligently because he did just what the Bankruptcy Court and the Standstill Order intended, during the period from July 18, 2012 to the filing of this motion.

## **CONCLUSION**

The question of whether the Bankruptcy Court, or this court, for that matter, may continue to hear this Adversary Proceeding seeking relief against Lumbermens and property of the Rehabilitator, plainly invokes the McCarran-Ferguson Act and requires the very analysis to be performed that 28 U.S.C. §157(d) mandates is to be performed only by the United States District Court.  Accordingly, the motion of the Rehabilitator for withdrawal of the reference with respect to the Adversary Proceeding (including the Ames Jurisdictional Motion) should be granted, and this Court should order that the Ames Jurisdictional Motion and the Rehabilitator's cross-motion will be heard and determined by this court.

Dated:   Jericho, New York
         October 19, 2012

Respectfully Submitted,

TORRE, LENTZ, GAMELL,
GARY & RITTMASTER, LLP
Attorneys for Defendant


By:   s/Mark S. Gamell
             Mark S. Gamell
             Robert Beau Leonard
100 Jericho Quadrangle, Suite 309
Jericho, NY 11753-2702
Tel.:  (516) 240-8900

21