**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 Case No. |
| AMES DEPARTMENT STORES, INC., *et al.*, | : | 01-42217 (REG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

---------------------------------------------------------------x

| | | |
|---|---|---|
| AMES DEPARTMENT STORES, INC., | : | |
| | : | |
| Plaintiff, | : | 12-cv-08365 (ALC) |
| | : | |
| vs. | : | Adversary Proceeding |
| | : | No. 06-01890 (REG) |
| LUMBERMENS MUTUAL CASUALTY CO., | : | |
| | : | |
| Defendant. | : | |

---------------------------------------------------------------x

### DEBTOR'S RESPONSE TO
### DEFENDANT'S OBJECTION TO THE BANKRUPTCY COURT'S
### <u>REPORT AND RECOMMENDATION CONCERNING JURISDICTION</u>

STORCH AMINI & MUNVES PC
Bijan Amini, Esq.
Avery Samet, Esq.
Jaime B. Leggett, Esq.
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

-and-

PROSKAUER ROSE LLP
Martin J. Bienenstock, Esq.
Timothy Q. Karcher, Esq.
Eleven Times Square
New York, New York 10036
(212) 969-3000

*Attorneys for the Plaintiff and Debtor*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

STANDARD OF REVIEW ..............................................................................................4

COUNTERSTATEMENT OF FACTS ............................................................................4

ARGUMENT ...................................................................................................................6

I.      THE BANKRUPTCY COURT CORRECTLY RULED THAT
THE EXERCISE OF FEDERAL JURISDICTION WILL NOT
INVALIDATE, IMPAIR, OR SUPERSEDE THE ILLINOIS
INSOLVENCY STATUTE .................................................................................6

      A.  The Bankruptcy Court's Analysis of the McCarran-Ferguson Test ......................6

      B.  The Bankruptcy Court's Application of the McCarran-Ferguson Test to
These Claims ..................................................................................................8

            1.  The Automatic Stay Claim ..........................................................................8

                  a.   There Is Exclusive Federal Jurisdiction Over This Claim ..........................8

                  b.   The Exercise of Federal Jurisdiction Will Not Invalidate, Impair or
Supersede Illinois Law ..................................................................................11

                  c.   Lumbermens' Arguments That No Stay Violation Occurred
Are Meritless ..................................................................................................13

            2.  The Marshaling Claim ................................................................................17

            3.  The Equitable Subordination Claim ............................................................18

            4.  Lumbermens' Proofs of Claim and Counterclaims ....................................19

            5.  The Other Claims Asserted by Ames ..........................................................20

II.     IN THE ALTERNATIVE, THE BANKRUPTCY COURT
CORRECTLY RULED THAT THE FIRST-EXERCISING JURISDICTION
DOCTRINE BARRED TRANSFERRING THIS CASE TO ILLINOIS ...................20

CONCLUSION ..............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Adelphia Comm'ns Corp. v. The America Channel, LLC (In re Adelphia Comm'ns Corp.),*
    345 B.R. 69 (Bankr. S.D.N.Y. 2006) ...................................................................................... 22

*Aetna Cas. and Surety Co. v. Clerk, U.S. Bankruptcy Court, New York, N.Y. (In re*
    *Chateaugay Corp.),* 89 F.3d 942 (2d Cir. 1996) ......................................................... 14, 15, 16

*Alderwoods Group, Inc. v. Garcia,*
    682 F.3d 958 (11th Cir. 2012) .............................................................................................. 22

*American Surety Co. v. Gerold,*
    255 A.D. 285 (N.Y. 1st Dept. 1938) ..................................................................................... 16

*American Surety Co. v. Palmer,*
    240 N.Y. 63 (N.Y. 1925) ....................................................................................................... 16

*Central Virginia Community College v. Katz,*
    546 U.S. 356 (2006) ......................................................................................................... 10, 22

*Donovan v. City of Dallas,*
    377 U.S. 408 (1964) .............................................................................................................. 21

*F.D.I.C. v. Four Star Holding Co.,*
    178 F.3d 97 (2d Cir. 1999) .................................................................................................... 24

*Frankford Trust Co. v. Allanoff (In re Dublin Properties),*
    20 B.R. 616 (Bankr. E.D. Pa. 1982) ..................................................................................... 22

*Gross v. Weingarten,*
    217 F.3d 208 (4th Cir. 2000) .......................................................................................... *passim*

*Halas v. Platek,*
    239 B.R. 784 (N.D. Ill. 1999) ................................................................................................ 9

*Hocker v. New Hampshire Ins. Co.,*
    922 F.2d 1476 (10th Cir. 1991) ............................................................................................ 17

*Humana Inc. v. Forsyth,*
    525 U.S. 299 (1999) ................................................................................................................ 7

*In re 48th St. Steakhouse, Inc.*,
835 F.2d 427 (2d Cir. 1987) ................................................................. 14

*In re AMR Corp.*,
730 F.3d 88 (2d Cir. 2013) ................................................................... 15

*In re Best Payphones, Inc.*,
279 B.R. 92 (Bankr. S.D.N.Y. 2002) ..................................................... 23

*In re BNT Terminals, Inc.*,
125 B.R. 963 (Bankr. N.D. Ill. 1990) .................................................... 23

*In re Borges*,
184 B.R. 874 (Bankr. D. Ct. 1995) ....................................................... 18

*In re Danbury Square Assocs., Ltd. P'Ship*,
150 B.R. 544 (Bankr. S.D.N.Y. 1993) ................................................... 18

*In re Ford*,
188 B.R. 523 (Bankr. E.D. Pa. 1995) ...................................................... 9

*In re Hutchins*,
400 B.R. 403 (Bankr. D. Vt. 2009) ....................................................... 16

*In re Kaiser Group Int'l Inc.*,
399 F.3d 558 (3d Cir. 2005) ................................................................. 14

*In re MCEG Productions, Inc.*,
133 B.R. 232 (Bankr. C.D. Cal. 1991) .................................................. 22

*In re Onecast Media, Inc.*,
439 F.3d 558 (9th Cir. 2006) ................................................................ 14

*In re Poughkeepsie Hotel Assocs. Joint Venture*,
132 B.R. 287 (Bankr. S.D.N.Y. 1991) ................................................... 18

*In re Raboin*,
135 B.R. 682 (Bankr. D. Kan. 1991) ....................................................... 9

*In re Tri-Valley Distr., Inc.*,
350 B.R. 628 (B.A.P. 10th Cir. 2006) ...................................... 11, 13, 18

*Koffman v. Osteoimplant Technology, Inc.*,
182 B.R. 115 (D. Md. 1995) .................................................................... 9

*Langenkamp v. Culp*,
    498 U.S. 42 (1990) ........................................................................................... 19

*Lawski v. Frontier Ins. Group (In re Frontier Insurance Group, LLC)*,
    517 B.R. 496 (Bankr. S.D.N.Y. 2014) ...................................................... 11, 12, 13

*Logan v. Credit General Ins. Co. (In re PRS Ins. Group Inc.)*,
    335 B.R. 77 (Bankr. D. Del. 2005) .................................................................. 18, 19

*Matter of Rimsat, Ltd.*,
    98 F.3d 956 (7th Cir. 1996) ............................................................................... 17

*MBNA Am. Bank, N.A. v. Hill*,
    436 F.3d 104 (2d Cir. 2006) ............................................................................... 10

*McRaith v. Am. Re-Ins. Co.*,
    2010 WL 624857 (N.D. Ill. Feb. 17, 2010) ..................................................... 11, 12

*MSR Exploration, Ltd. v. Meridian Oil*,
    74 F.3d 910 (9th Cir. 1996) ................................................................................. 9

*N.Y. Marine and Gen. Ins. Co. v. LaFarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010) ............................................................................... 20

*Ochs v. Simon (In re First Cent. Fin. Corp.)*,
    269 B.R. 502 (Bankr. E.D.N.Y. 2001) ............................................................. 11, 12

*Ostano Commerzanstalt v. Telewide Systems, Inc.*,
    790 F.2d 206 (2d Cir. 1986) ............................................................................... 15

*Plains Comm. Bank v. Long Family Land & Cattle Co.*,
    554 U.S. 316 (2008) ......................................................................................... 24

*Princess Lida of Thurn and Taxis v. Thompson*,
    305 U.S. 456 (1939) ......................................................................................... 21

*PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*,
    267 Conn. 279 (Conn. 2004) ............................................................................... 14

*Sampson v. United Fed. of Teachers*,
    No. 89 CIV. 5357 (JFK), 1990 WL 48048 (S.D.N.Y. 1990) .................................... 24

*Saunders v. Reeher (In re Saunders)*,
    105 B.R. 781 (Bankr. E.D. Pa. 1989) .................................................................... 9

*Savings Bank of Manchester v. Kane*,
    396 A.2d 952 (Conn. C.P. 1978) ................................................................................ 16

*Sermersheim v. Sermersheim (In re Sermersheim)*,
    97 B.R. 885 (Bankr. N.D. Ohio 1989) ...................................................................... 9

*Shearson/American Express Inc. v. McMahon*,
    482 U.S. 220 (1987) ................................................................................................ 10

*Student Assistance Corp. v. Hood*,
    541 U.S. 440 (2004) ................................................................................................ 22

*U.S. ex rel. Ayala v. Tubman*,
    366 F.Supp. 1268 (E.D.N.Y. 1973) .......................................................................... 24

*United States v. Whiting Pools, Inc.*,
    462 U.S. 198 (1983) ..........................................................................................14, 22

**Statutes**                                                                      **Page(s)**

11 U.S.C. §105(a) ................................................................................................ 1, 17

11 U.S.C. §362 ........................................................................................................ 1

11 U.S.C. §362(a)(3) ............................................................................... 8, 14, 21, 22

11 U.S.C. §362(a)(6) .............................................................................................. 8

11 U.S.C. §363(a) ................................................................................................... 8

11 U.S.C. §509 ..................................................................................................... 15

11 U.S.C. §509(a) ................................................................................................. 16

11 U.S.C. §509(c) ................................................................................................. 16

11 U.S.C. §510 ....................................................................................................... 1

11 U.S.C. §510(c) ............................................................................................ 16, 18

11 U.S.C. §541 ..................................................................................................... 14

11 U.S.C. §1107 ............................................................................................... 1, 17

15 U.S.C. §78aa .................................................................................................... 10

15 U.S.C. §§1011-1015 .......................................................................................... 6

28 U.S.C. §157 ....................................................................................................... 9

28 U.S.C. §§1334 ................................................................................................... 8

28 U.S.C. §1334(e) .......................................................................................... 10, 23

Ames Department Stores, Inc. ("Ames") respectfully submits this Response to the Revised Objection (the "Objection" or "Obj.") [Dkt. No. 38] of Lumbermens Mutual Casualty Company (acting through the Director of Insurance of the State of Illinois as statutory Liquidator of Lumbermens Mutual Casualty Company) ("Lumbermens"), to the Report and Recommendation on Ames' Motion to Confirm Exclusive Jurisdiction dated December 7, 2015 (the "Report") [Dkt. No. 18] issued by the Honorable Robert E. Gerber of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which was issued pursuant to the Court's Opinion and Order dated July 3, 2014 (the "Reference Order") [Dkt. No. 15].

## PRELIMINARY STATEMENT

Both Ames and Lumbermens claim superior rights in an $8 million trust account held by the Bank of New York (the "Trust Monies").  Ames, the plaintiff in this action, asserts claims under Title 11 (the "Bankruptcy Code") for violation of the automatic stay (11 U.S.C. §362), marshaling (11 U.S.C. §§105(a), 1107), and equitable subordination (11 U.S.C. §510), as well as state law claims.  Lumbermens has filed counterclaims as well as proofs of claim in Ames' bankruptcy case, asserting that it has a superior rights to those monies under state law.  Some court must resolve this dispute:  the question is whether it should be a federal court, exercising its bankruptcy jurisdiction, or the Illinois state court overseeing Lumbermens' liquidation.

To answer this question, this Court previously referred the following two questions to the Bankruptcy Court for report and recommendation:

> (1) Does the exercise of bankruptcy jurisdiction "invalidate, impair
> or supersede" the Illinois state insurance insolvency law,
> within the meaning of the McCarran-Ferguson Act?
>
> The Bankruptcy Court answered no.

(2) Even if so, does the McCarran-Ferguson Act's preemptive
framework extend to the first-exercising jurisdiction doctrine?

The Bankruptcy Court answered no.

(Reference Order 8).  The Bankruptcy Court was correct, and issued a well-reasoned and thorough

Report explaining the bases for its findings.

The Bankruptcy Court's Report concludes that this action, which principally concerns

Lumbermens' violation of the automatic stay, should be litigated in federal court as the Court has

exclusive, *in rem* jurisdiction over these matters, which cannot be adjudicated in state court.  First,

the protection of the automatic stay is central to the bankruptcy system, and where federal

jurisdiction is strongest and most exclusive.  Second, state courts have no power to adjudicate

automatic stay violations, such that any transfer of the case to Illinois state court would likely result

in victory by default for Lumbermens in this dispute.  Third, no provision in the Illinois insolvency

statute provides for universal jurisdiction over all suits involving an insurer's rehabilitator or

liquidator before the state court.  Thus, for this case, federal jurisdiction is at its strongest, state

insolvency jurisdiction at its weakest, and a decision removing the case to Illinois cannot be

supported and should not be granted.

Recommending that that the action be tried in federal court, the Bankruptcy Court noted

the peculiar features of this otherwise trial-ready case.  Here, Lumbermens and Ames claim an

interest in Trust Monies which are controlled by neither – they are both plaintiffs vis-à-vis those

funds.  Determination of the case requires the interpretation of numerous orders entered by the

Bankruptcy Court and of facts which occurred in the context of Ames' bankruptcy.  Lumbermens

has separately asserted tens of millions of dollars of claims against Ames, claims which it contends

are intertwined with the Trust Monies.  For all of these reasons, the Bankruptcy Court concluded

application of federal jurisdiction over this action would not "invalidate, impair or supersede" the Illinois state insurance insolvency law within the meaning of the McCarran-Ferguson Act.

Lumbermens' Objection ignores most of the Bankruptcy Court's analysis.  Instead, Lumbermens attempts to elevate its Objection into a motion for summary judgment:  in short, Lumbermens' argument is that there is no federal jurisdiction because there was no violation of the automatic stay.  Lumbermens argues that the facts – in reality, Lumbermens' self-serving interpretation of various contracts and its legal arguments – show that Lumbermens never violated the automatic stay.  Second, Lumbermens argues there was no violation of the automatic stay because the doctrine of equitable subrogation allowed it to take the actions that it did.  Neither of these arguments has merit.

In addition, the Bankruptcy Court concluded that, even if the action were otherwise reverse-preempted by McCarran-Ferguson, the first-exercising jurisdiction doctrine of *Princess Lida* would bar the transfer of this case to Illinois state court.  The first-exercising doctrine jurisdiction provides that the ordinary rules of preemption are set aside when a court has already exercised jurisdiction over an *in rem* or *quasi in rem* dispute.  The parties' tussle over the Trust Monies – which sit in a bank account in New York outside Ames' and Lumbermens' control – bears all the hallmarks of an *in rem* or *quasi in rem* dispute.  As discussed in more detail below, Ames is attempting to protect its estate from the interference caused by Lumbermens when Lumbermens entered into a Letter Agreement with Travelers without the consent or approval of either Ames or the Bankruptcy Court in order to improve the priority of Lumbermens' claims against Ames' estate, thereby "'sticking it' to Ames' other unsecured creditors."  (Report 29).

The Court should deny Lumbermens' Objection, adopt the Bankruptcy Court's Report, and set this case for speedy disposition at trial.  This dispute will require little if any live testimony and

the Court can interpret the relevant contracts and law.  We remind the Court that when this jurisdiction dispute commenced, in July 2012, this matter was scheduled for trial.  It is time to conclude this case on the merits.

## STANDARD OF REVIEW

The Bankruptcy Court's conclusions of law are subject to *de novo* review.  However, as this Court previously ruled:  "Given its intimate familiarity with the case and the fact that the Motion presents additional issues that fall squarely within the Bankruptcy Court's expertise, the Bankruptcy Court's initial consideration of the Jurisdictional Motion will conserve judicial and litigant resources and facilitate a prompt resolution."  (Reference Order 9).

## COUNTERSTATEMENT OF FACTS

The extensive procedural history and factual predicate underlying this case is exhaustively laid out in pages 3-13 of the Bankruptcy Court's Report.  Briefly stated, Lumbermens and Ames entered into a contract pre-petition under which Lumbermens provided a surety bond for payment of up to $14.35 million to Travelers, which was unconditionally payable on Travelers' demand. (Report 3).  If Travelers called upon the bond, Ames' obligations to reimburse Lumbermens were not secured.  (*Id.* at 3-4, 5).  Travelers additionally had recourse to cash collateralized letters of credit obtained by Ames, and any draw on those letters of credit would result in Ames' cash reserves being impacted.  (*Id.* at 4).  In May 2003, post-petition, Travelers elected to proceed against the bond and made a demand for payment of the full $14.35 million amount, which Lumbermens refused.  (*Id.* at 5).  Instead, in November 2003, Lumbermens reached an agreement with Travelers (the "Letter Agreement"), which was done without involvement of either Ames or the Bankruptcy Court, pursuant to which Travelers would fully draw upon the letters of credit before seeking recourse, if needed, from Lumbermens (to the detriment of Ames' other creditors),

and Lumbermens would deposit $8 million in Trust Monies into a trust account to satisfy any remaining amounts owing after the letters of credit were exhausted.   This agreement still left Lumbermens with an additional $6.35 million in liability to Travelers, the total amount of the bond of $14.35 million minus $8 million.  (*Id.* at 5-6).  This agreement was never presented to or approved by the Bankruptcy Court and it attempted to hinder Ames from managing its estate and collateral.  (*Id.*)   In 2010 and 2011, Lumbermens filed administrative expense claims against Ames' estates for $17.9 million, which were asserted as counterclaims and which Lumbermens agreed must be tried in conjunction with this proceeding.  (*Id.* at 11-12).  The parties later agreed by stipulation to cap Lumbermens' administrative claims at $2 million.  (*Id.* at 11).  In July 2012, shortly after the matter was trial ready, an agreed order of rehabilitation was entered for Lumbermens in Illinois state court (*id.*), and Lumbermens thereafter asserted that the jurisdiction of this Court had been reverse preempted by the McCarran-Ferguson Act.  (*Id.* at 13).

Lumbermens spends much of its brief attacking the Report's findings of fact as "materially erroneous." (Obj. 4-17).  In reality, however, Lumbermens alleges hardly any actual misstatement of facts by the Bankruptcy Court.  Lumbermens instead argues that the Bankruptcy Court should have emphasized language in the relevant agreements which Lumbermens finds persuasive (Obj. 4-6, 8-11) and should have focused on Lumbermens' defenses to liability (Obj. 4-6, 8-11, 14-15), along with other quibbles with the Report.[1]  For example, Lumbermens argues (1) that the Letter Agreement did not "provide[] for the exhaustion of Ames' cash collateral" because it "merely incorporated the very discretion Ames had ceded to Travelers to look to the letters of credit first,"

---

[1] Such quibbles include:  the Report should have referred to the contract signed by Lumbermens and Ames to bond the debt to Travelers as the "Bond" instead of the "Bond Agreement" (Obj. 4); when the Report correctly states that the bond required Lumbermens to pay Travelers within seven business days, unconditionally and irrespective of the merits of Traveler's demand, the Report failed to mentioned Lumbermens' alleged defenses to such demand (Obj. 5-6); and the Report omitted the fact that Lumbermens filed an Answer disputing the Complaint (Obj. 14).

which were cash collateralized (Obj. 9); and (2) if Travelers had obtained a recovery on the bond, then Lumbermens would have been equitably subrogated to Travelers' rights against the letters of credit, resulting in no net benefit to Ames' estates (Obj. 13).  In essence, Lumbermens erroneously argues that it should win the ultimate dispute:  that no stay violation occurred, that the Trust Monies are not subject to marshaling, that Lumbermens' claims are not subject to equitable subordination, and that Lumbermens' counterclaims will prevail.  Lumbermens has made no motion to dismiss and no motion for summary judgment.  The parties did not fully brief the merits of the claims because this Court did not refer that question to the Bankruptcy Court, and thus Lumbermens' arguments about the merits fall outside of the scope of the referred questions.  (*See* Reference Order 8-9).

## ARGUMENT

I.     **THE BANKRUPTCY COURT CORRECTLY RULED THAT THE EXERCISE OF FEDERAL JURISDICTION WILL NOT INVALIDATE, IMPAIR, OR SUPERSEDE THE ILLINOIS INSOLVENCY STATUTE**

### A.   The Bankruptcy Court's Analysis of the McCarran-Ferguson Test

The McCarran-Ferguson Act, 15 U.S.C. §§1011-1015, creates an exception to the ordinary rules of federal preemption.  Courts apply a three-part test to determine whether a federal law is reverse-preempted by a state law:

(a) Does the federal statute not specifically relate to insurance;

(b) Was the state law at issue enacted to regulate the business of insurance; and

(c) Would the federal statute at issue invalidate, impair or supersede the state law.

(Report 33).  *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999).  The Bankruptcy Court found that Lumbermens met the first two prongs of the test, and the present dispute is only about the third prong.[2]

To determine the third-prong, the Bankruptcy Court relied upon the Supreme Court's definition of each term at issue:

> "invalidate" ordinarily means to "render ineffective, generally without providing a replacement rule or law"; the term "supersede" ordinarily means to "displace (and thus render ineffective) while providing a substitute rule"; and the term "impair" means "to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner."  The Supreme Court further held that "[w]hen federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, McCarran-Ferguson does not preclude its application."

(Report 38) *quoting Humana*, 525 U.S. at 307, 309, 310.[3]  *See also Gross v. Weingarten*, 217 F.3d 208, 222 (4th Cir. 2000) ("We are skeptical that Congress intended, through the McCarran-Ferguson Act, to remove federal jurisdiction over every claim that might be asserted against an insurer in state insolvency proceedings.  If nothing else, this argument proves too much. . . .") (citations omitted).

---

[2] Lumbermens agrees that this is the proper test.  (Obj. 25).

[3] Lumbermens agrees with this standard.  (Obj. 25).

**B.** **The Bankruptcy Court's Application of the McCarran-Ferguson Test to These Claims**

    1. The Automatic Stay Claim

        *a. There Is Exclusive Federal Jurisdiction Over This Claim*

The Report found that Ames' claim for violation of the automatic stay and contempt presented "classic bankruptcy issues" (Report 24):

> Pointing out, properly, that its rights (1) under the Bond Agreement and (2) to excess cash collateral were property of the Ames estate, Ames seeks a declaration that Lumbermens violated the automatic stay when, without Court approval, Lumbermens modified the terms of the Bond Agreement through the Letter Agreement, and, among other things, removed Lumbermens' obligation to pay Travelers on demand, and prohibited Travelers from drawing on the Bond issued under the Bond Agreement unless Travelers had first drawn down on Ames' cash collateral. And relying on the basic bankruptcy principle that actions taken in violation of the automatic stay are void, and punishable by contempt, Ames seeks a declaration from this Court that Lumbermens' actions here were void; a declaration of contempt; and remedies for contempt, including turnover of the Trust Monies to Ames and payment of the amounts remaining under the Bond Agreement.

(*Id.*) (footnotes with citations omitted).[4] After considering the precedents and the statutes, the Report held there was *exclusive* bankruptcy jurisdiction over such a claim as a violation of the automatic stay "is also core matter, going to fundamental, and critically important, bankruptcy policy."[5] (*Id.* at 25-26). "Enforcement of the automatic stay is essential to the 'orderly and

---

[4] The automatic stay is contained in 11 U.S.C. §362(a), which among other things, expressly prohibits any act to obtain possession or control over property of the estate (§362(a)(3)); any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case (§362(a)(6)); and the setoff of any debt owing to the debtor (362(a)(7)). Cash collateral is defined in 11 U.S.C. §363(a).

[5] Lumbermens argues that the Report's discussion of federal bankruptcy jurisdiction is "irrelevant" because this Court withdrew the reference from the Bankruptcy Court. (Obj. 18). This is plainly not true. Congress provided the district court with bankruptcy jurisdiction to hear proceedings such as this. *See* 28 U.S.C. §§1334(a), (b), (e) (providing various types of bankruptcy jurisdiction to the district courts). In turn, the core nature of this Court's jurisdiction is relevant to the analysis under the McCarran-Ferguson Act (and the decision not to discretionarily abstain from hearing the merits) because it shows how the "most critical" interests of the federal bankruptcy system are implicated. (Report

equitable administration of the estate,' for the reason, among others, that it is essential to protection of the bankruptcy court's *in rem* jurisdiction." (*Id.*).

The Bankruptcy Court relied on the reasoning of *Halas v. Platek*, 239 B.R. 784, 788 (N.D. Ill. 1999) that allowing state courts to enforce violations of the automatic stay, "a penalty so closely intertwined with the bankruptcy case itself, would undermine Congress' intent to have one uniform bankruptcy system." (Report 26). It further endorsed *Halas*' reasoning that "indeed, it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized." (*Id.*) quoting *Halas*, 239 B.R. at 788 (holding that the Illinois state courts have no jurisdiction to adjudicate violations of the automatic stay).[6] Thus, transferring this action to Illinois will deprive Ames of any forum in which to assert its claim and will unfairly result in a de facto victory for Lumbermens by taking the case away from the only court that has jurisdiction to resolve Ames' federal claims. *See also Gross v. Weingarten*, 217 F.3d at 222 (warning that overbroad reading of McCarran-Ferguson "would operate to divest exclusively federal jurisdiction as effectively as it would diversity jurisdiction, leaving many plaintiffs with no

---

19). Pursuant to 28 U.S.C. §157, proceedings heard under this jurisdiction can be referred to the Bankruptcy Court (§157(a)) and that reference can be withdrawn (§157(d)) as it was here.

[6] *See also MSR Exploration, Ltd. v. Meridian Oil*, 74 F.3d 910, 913 (9th Cir. 1996) ("Congress has expressed its intent that bankruptcy matters be handled in a federal forum."); *Koffman v. Osteoimplant Technology, Inc.*, 182 B.R. 115, 124 (D. Md. 1995) ("Remedies and sanctions for improper behavior . . . in bankruptcy court . . . are matters on which the Bankruptcy Code is far from silent and on which uniform rules are particularly important."); *In re Raboin*, 135 B.R. 682, 684 (Bankr. D. Kan. 1991) ("[T]his court has exclusive jurisdiction to determine the extent and effect of the stay, and the state court's ruling to the contrary does not bar the debtor's present motion."); *Saunders v. Reeher (In re Saunders),* 105 B.R. 781, 784 (Bankr. E.D. Pa. 1989) ("Congress intended to establish a comprehensive enforcement mechanism for violations of the automatic stay . . . within the bankruptcy code itself."); *Sermersheim v. Sermersheim (In re Sermersheim),* 97 B.R. 885, 888 (Bankr. N.D. Ohio 1989) ("It is the bankruptcy court alone that has the exclusive jurisdiction to determine questions involving the automatic stay."); *In re Ford*, 188 B.R. 523, 526 (Bankr. E.D. Pa. 1995) ("The resolution of certain legal issues which arise in the course of bankruptcy cases is confined to the bankruptcy courts.").

forum in which to assert their federal rights.")  The Report concluded that it would be "dubious wisdom (if not also absurd) to order that a state tribunal replace a federal one in deciding the federal question of contempt [for violation of the automatic stay], a matter of strong federal interest." (Report 40).  Nothing in Lumbermens' brief rebuts this fundamental point.[7]

The Bankruptcy Court also relied on the language of 28 U.S.C. §1334(e), which provides that the district court where a bankruptcy is commenced "shall have exclusive jurisdiction . . . of property of the estate."  (Report 27).  The Bankruptcy Court found that the bankruptcy court's ability to *enforce* its *in rem* jurisdiction over the bankrupt's property has been a "critical foundation of bankruptcy law for hundreds of years."  (*Id.*).[8]  Finally, the Bankruptcy Court relied upon the Supreme Court's decision in *Central Virginia Community College v. Katz*, 546 U.S. 356, 369-70 (2006) which expressly held that the bankruptcy courts have the exclusive power to issue ancillary orders necessary to protect a bankruptcy court's *in rem* jurisdiction. (*Id.*).  Lumbermens' brief does not address this analysis or refer to 28 U.S.C. §1334(e) or *Katz* or any of the cases cited in this critical section of the Report.  Instead, as discussed below, Lumbermens argues that there was no stay violation and that it will ultimately win on the merits.  (Obj. 19-22).

---

[7] Lumbermens' invocation, in a footnote, of *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104 (2d Cir. 2006) is irrelevant. (Obj. 22).  In *MBNA*, the property taken in apparent violation of the stay had promptly been returned to the bankruptcy estate, the bankruptcy case had been closed, and the debtor had been discharged, and the court held that a claim seeking damages for a violation of the automatic stay may be sent to arbitration pursuant to an otherwise binding voluntary agreement to arbitrate.  That has nothing to do with authorizing such claims to be litigated in state court (for example, claims under the Exchange Act cannot be litigated in state court, 15 U.S.C. §78aa, but they can still be arbitrated, *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220 (1987)), and certainly has nothing to do with authorizing belatedly filed state court proceedings to seize control of a pending proceeding seeking relief for violation of the automatic stay, which was on the eve of trial.

[8] *See Central Virginia Community College v. Katz*, 546 U.S. 356, 369 (2006) ("Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction.") (citations omitted).

> b. *The Exercise of Federal Jurisdiction Will Not Invalidate, Impair or Supersede Illinois Law*

After finding that federal jurisdiction over the automatic stay claim was at its strongest, and the state jurisdiction at its weakest, the Report concluded that exercise of such jurisdiction to decide ownership of the Trust Money would not invalidate, impair or supersede any Illinois law in any way.  (Report 39-42).  The Court reasoned:

> That property—the cash in the trust account—is no more property of the Lumbermens estate than it is property of Ames'.  It is not now part of the Lumbermens estate, if it ever will be.  A federal court's determination of rights to that property, without more, does not invalidate, impair or supersede state insurance law—even if the federal court later decides that the property never becomes part of the insurer's estate.  The property in question is not subject to the *in rem* jurisdiction of the Illinois court, and insurance law has nothing to do with the controversy.

(Report 39).  The Report rejected the argument, advanced by Lumbermens, that a statute conferring state court jurisdiction over an insurance liquidation "establishes an exclusive state court forum" for the determination of claims against the insurer.  *See* Report 40, relying on *Gross*, 217 F.3d at 222 (Virginia statute empowering insolvency commission with jurisdiction over all further proceedings related to insurer did not strip federal courts of concurrent jurisdiction); Report 41, relying on *McRaith v. Am. Re-Ins. Co.*, 2010 WL 624857, at *3 (N.D. Ill. Feb. 17, 2010) (Illinois insolvency statute does not provide for exclusive jurisdiction of disputes with rehabilitator of insolvent insurer).  *See also In re Tri-Valley Distr., Inc.*, 350 B.R. 628, at *4 (B.A.P. 10th Cir. 2006) (Washington insurance insolvency law did not provide for exclusive jurisdiction of all claims against insolvent insurer and did not prevent federal court from determining dispute over property claimed by debtor and insurer); *Lawski v. Frontier Ins. Group (In re Frontier Insurance Group, LLC)*, 517 B.R. 496, 506 (Bankr. S.D.N.Y. 2014) (New York insolvency law did not prevent federal court from determining ownership of asset claimed by both debtor and insurer);

*Ochs v. Simon (In re First Cent. Fin. Corp.)*, 269 B.R. 502, 519 (Bankr. E.D.N.Y. 2001) (New York insolvency law did not prevent federal court from determining disposition of policy proceeds claimed by both debtor and insurer).  For the reasons discussed in the Report and these decisions, state insolvency proceedings do not automatically divest federal courts of their jurisdiction.

In *McRaith* (replied upon by the Report at 41), the Northern District of Illinois ruled against the Illinois Insurance Commissioner and held that "the Illinois priority scheme can coexist with federal jurisdiction over the underlying action resolving a claim."  (Report at 41) *citing McRaith v. Am. Re-Ins. Co.*, 2010 WL 624857, at *3 (N.D. Ill. Feb. 17, 2010).  There, the court held that the Illinois insolvency statute "does not purport to confer on state courts exclusive jurisdiction" in connection with insolvency proceedings.  *McRaith*, 2010 WL 624857 at *3.  Relying on this feature of the Illinois statutory framework, *McRaith* denied a remand to state court, where the Illinois insurance commissioner argued that McCarran-Ferguson reverse-preempted federal diversity jurisdiction and removal.  (*Id.*)  The *McRaith* decision and its interpretation of the Illinois insurance law is binding on the Illinois Commissioner as *res judicata*.[9]

The Report (at 39) also relied on *Lawski v. Frontier Ins. Group (In re Frontier Insurance Group, LLC)*, 517 B.R. 496 (Bankr. S.D.N.Y. 2014), in which the bankruptcy court decided that it had the jurisdiction to determine whether any prior orders in the case had already adjudicated the disputed ownership of property.  The *Lawski* court held that "a federal court's ordinary

---

[9] Lumbermens argues that (1) that *McRaith* did not involve a bankruptcy (Obj. 32), (2) the Liquidator was the plaintiff (Obj. 32-33) and (3) that *McRaith* applied a Seventh Circuit test (Obj. 33).  These arguments are superficial and wrong.  As in *McRaith*, the Liquidator claims access to funds in which Ames claims an interest.  Although Ames initiated this suit as a declaratory judgment action, both Ames and the Liquidator seek an order from a court declaring the Trust Monies to be theirs; moreover, Lumbermens has filed numerous proofs of claim and counter-claims against Ames.  Second, there is no different Seventh Circuit and Second Circuit test in this regard.  Even if there were such a conflict, it would be irrelevant as the central holding of *McRaith* is that the Illinois statutory scheme for insolvent insurers *does not* require an exclusive forum for disputes.  That finding is an interpretation of Illinois law by a federal court sitting in Illinois, and Lumbermens' brief cites to no cases interpreting the Illinois statute to the contrary.

determination of property rights, interpretation of contracts, or interpretation of state statutes does not 'impair' state law, even when a federal court's decision has a financial impact on the insolvent insurer's estate."[10]

Notably, Lumbermens attempts to distinguish two cases relied upon in the Report (at 33, 39-41), *Gross* and *Tri-Valley*, on the grounds that the receivers there elected to avail themselves of federal court jurisdiction to adjudicate their claims but later sought to avoid it on McCarran-Ferguson grounds (Obj. 31), which does not explain how this situation – where Lumbermens has sought to have the Bankruptcy Court adjudicate its counterclaims and proofs of claims against Ames but later sought to assert the McCarran-Ferguson Act – is any different. *See also* Obj. 15-17 (describing at great length how the Illinois Insurance Department has been operating behind the scenes and overseeing Lumbermens since 2003).

### c. *Lumbermens' Arguments That No Stay Violation Occurred Are Meritless*

As noted above, rather than directly addressing whether the Bankruptcy Court has exclusive, *in rem* jurisdiction over a claim for violation of the automatic stay, Lumbermens instead argues that (1) Lumbermens' actions did not violate the automatic stay because the relevant contracts allowed it to do what it did (Obj. 19-20) and (2) Lumbermens' actions did not violate the automatic stay because the doctrine of equitable subrogation would have allowed it to do what it did.  (Obj. 13, 21-22).  Neither of these arguments contests the Bankruptcy Court's jurisdiction to hear the dispute, only the merits of the dispute.

---

[10] Lumbermens attempts to distinguish *Lawski* on the grounds that the bankruptcy court there decided only to determine whether any prior orders in the case had adjudicated the ownership of the disputed property, rather than to interpret the contracts at issue.  (Obj. 33.)  In *Lawski*, the debtor and the insolvent insurer were disputing which one of them owned the reversionary interest in certain real property, and the bankruptcy court had already entered orders potentially adjudicating the ownership of that property.  *Lawski*, 517 B.R. at 501-02.  As such, the Bankruptcy Court was not persuaded that abstention was merited because no state law issues were at play, while still finding that the McCarran-Ferguson Act was simply not implicated: "if this Court finds that the assets belong to the Reorganized Debtor, it would not have been [the insurer's] asset to liquidate anyway."  *Id.* at 506.

First, Lumbermens' argument that the bond agreement allowed it to do whatever it wanted, even to the extent of impairing Ames' cash collateral, is plainly wrong.  Lumbermens' acts "had the effect of 'sticking it' to Ames' other unsecured creditors" because it was attempting – through its post-petition agreement with Travelers – to cause Travelers to draw on the cash-collateralized letters of credit.  (*See* Report 29).  Ames' interest in cash collateral – and especially in the excess collateral after application of the letters of credit – constituted property of Ames' bankruptcy estate.  *See In re Kaiser Group Int'l Inc*., 399 F.3d 558, 566 (3d Cir. 2005) (trustee's interest in excess collateral from letter of credit is property of the estate, and thus within the bankruptcy court's jurisdiction); *In re Onecast Media, Inc.*, 439 F.3d 558, 564 (9th Cir. 2006) (same).

Ames' interest in Lumbermens' good faith performance under the bond agreement also constituted property of the estate.  *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983) (property of the estate under Bankruptcy Code section 541 is broadly interpreted to include any legally enforceable right of the debtor); *In re Chateaugay*, 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) ("The bonding agreements are valid contracts, for which the Debtors bargained and paid valuable consideration.  Contractual rights are intangible property which is included within the estate of the debtor."); *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 317-18 (Conn. 2004) (principals have the right to enforce bad faith breaches of a surety's obligations under bond agreements).[11]

The automatic stay, on its face, applies to a wide range of acts, including "*any act . . . to exercise control over property of the estate.*"  11 U.S.C. §362(a)(3).  The stay applies even to secondary and tertiary effects.  *See In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir.

---

[11] The Report noted and rejected as irrelevant Lumbermens' argument that the "bond" and the bond proceeds were not estate property because Ames "bundle of contractual rights under the bond agreement (and thus the bond agreement itself)" constituted estate property.  (Report 22 n.70).

1987) (holding that landlord's effort to terminate prime tenant's lease violated automatic stay with respect to debtor's sublease because "[i]f an action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay").  Once a bankruptcy is filed, parties' state law rights are curtailed in order to protect the bankruptcy estate, and – regardless of the language of whatever contracts may exist – the protections of the automatic stay can only be lifted by court order.  *See Ostano Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206, 207 (2d Cir. 1986) ("Since the purpose of the stay is to protect creditors as well as the debtor, the debtor may not waive the automatic stay."); *see also In re AMR Corp.*, 730 F.3d 88, 102-03 (2d Cir. 2013) (attempt by lender to invoke its contractual rights to rescind a prepetition acceleration in order to utilize the protections of a prepayment penalty clause violated the automatic stay).

Second, while Lumbermens argues at length that, even assuming that its actions did impact Ames' cash collateral, it should be entitled to be subrogated to the rights of Travelers (and thus able to independently proceed against the cash collateralized letters of credit) (Obj. 6, 9, 10, 13, 21-22), this argument likewise goes to the merits of Lumbermens defenses rather than whether the Bankruptcy Court has jurisdiction to decide those arguments.  Whatever rights to subrogation Lumbermens has – and Ames strongly contests that Lumbermens has any such rights – are determined as a matter of bankruptcy law.  *See* 11 U.S.C. §509 (providing requirements for subrogation); *Aetna Cas. and Surety Co. v. Clerk, U.S. Bankruptcy Court, New York, N.Y. (In re Chateaugay Corp.)*, 89 F.3d 942, 947 (2d Cir. 1996) (holding that party's subrogation rights were governed by the Bankruptcy Code rather than the law of equity, with the law of equity only "provid[ing] background for an analysis of the Code").  In turn, the Bankruptcy Code provides that a party will not be subrogated if the subrogor acted inequitably, such as by causing damages

to Ames and violating the automatic stay.  *See* 11 U.S.C. §510(c); *see also*, *e.g.*, *In re Hutchins*, 400 B.R. 403, 415-16 (Bankr. D. Vt. 2009) (denying creditor's claim for equitable subrogation because of impact subrogation would have on third parties).

Moreover, Lumbermens cannot receive a subrogation claim as it never paid Travelers.  11 U.S.C. §509(a).  Even if payment were made, until Travelers was paid *in full* by Lumbermens, any such subrogation claim will be at best subordinated (and – as conceded by Lumbermens (Obj. 13) – the terms of the Bankruptcy Court's December 15, 2008 order provide that this proceeding will be prosecuted as if the settlement with Travelers "had not occurred").  *See* 11 U.S.C. §509(c) (providing that a subrogor's claim will be subordinated to the claim of the subrogee until the subrogee is paid in full); *Aetna Cas. and Surety Co.*, 89 F.3d at 948 (holding that if a subrogee is not paid in full, a subrogee's "ability to be subrogated *in any way* would be called into question" by Bankruptcy Code section 509(c)) (emphasis supplied).  State law would bar subrogation for this same reason.  *See*, *e.g.*, *American Surety Co. v. Gerold*, 255 A.D. 285, 287 (N.Y. 1st Dept. 1938) ("The case falls directly within the familiar rule that no right of subrogation arises in favor of a surety or indemnitor unless the loss of the principal has been paid in full.") (citations omitted); *Savings Bank of Manchester v. Kane*, 396 A.2d 952 (Conn. C.P. 1978) ("The general rule that payment of part of the debt will not give rise to a right of subrogation on the part of the person seeking subrogation may appear to be a harsh one. . . . A surety who is subrogated upon partial payment becomes a competitor with the creditor and there is no equity on which to base the deprivation of the creditor of any of his legal rights for the benefit of the surety until he, the creditor, has been paid in full.") (citation omitted); *American Surety Co. v. Palmer*, 240 N.Y. 63, 66-68 (N.Y. 1925) (surety company that delivered note of third party to trust company to cover "some" of loss did not become subrogated to the claim against the third party upon delivery of the

note).  Finally, state law would bar Lumbermens from being subrogated to the rights of Travelers

due to its inequitable conduct.  *See*, *e.g.*, *Hocker v. New Hampshire Ins. Co.*, 922 F.2d 1476, 1486

(10th Cir. 1991) ("The person asserting the right to subrogation must be without fault.").

2.    The Marshaling Claim

The Report also found that there is core and exclusive federal jurisdiction over Ames' claim

for marshaling pursuant to sections 1107 and 105(a) of the Bankruptcy Code.  This claim

> seeks a determination that Ames' cash collateral should not have
> been tapped—that Travelers should have been compensated first by
> the Bond Agreement and resulting Trust Monies, and only thereafter
> by monies from the Letters of Credit.   An important element of
> Claim #6 [for marshaling] is that Lumbermens elevated its
> unsecured claim for indemnification for amounts Lumbermens
> might pay as a result of the Bond Agreement into a secured claim
> (or no claim at all), by modifications to the Bond Agreement which
> had the effect of "sticking it" to Ames' other unsecured creditors.

(Report 29).  Among other things, this claim is core because "it involves a distortion of the claims

allowance process, a classic core function."  (Report 30).  *See Matter of Rimsat, Ltd.*, 98 F.3d 956,

961-62 (7th Cir. 1996) (Posner, J.) (upholding bankruptcy court's refusal to abstain after foreign

receivership filed in Nevis; "[t]he efficacy of the bankruptcy proceeding depends on the court's

ability to control and marshal the assets of the debtor wherever located.").  In addition, it "involves

two types of estate property that unquestionably belonged to Ames' estate at the time of its chapter

11 filing – its bundle of rights under the Bond Agreement and its cash collateral."  (Report 30).

In response to this finding, Lumbermens argues that Ames will not be able to meet the

elements of a marshaling claim because it asserts that the claim is not available where the debtor

is seeking to cause a creditor to be paid from non-estate funds.  (Obj. 23-24).  This is an argument

to the merits.  As described in the Report, Ames *is* seeking to marshal two estate assets:  Ames'

right, after Travelers' demand, to have Lumbermens fulfill its obligations under the bond and

Ames' cash collateral.  (Report 30).  Further, even the case relied on by Lumbermens in support

17

of this requirement, *In re Borges*, 184 B.R. 874 (Bankr. D. Ct. 1995), itself notes that there are exceptions to it, including where the creditor has engaged in inequitable conduct. *Id.* at 879 n.3.

As this claim − like the claim for the stay violation − merely involves a determination of the Trust Monies and places no further imposition on the Lumbermens' liquidation, there is no invalidation, impairment or supersession of the Illinois insurance law.

### 3. The Equitable Subordination Claim

The Report also found that Ames' claim to equitably subordinate Lumbermens' claims under section 510(c) of the Bankruptcy Code was a core claim with exclusive federal jurisdiction. (Report 30). This claim seeks

> to allow Lumbermens' claims only at a level lower than the level for Ames' general unsecured creditors. Ames seeks that relief based on Lumbermens' alleged inequitable conduct—once again, Lumbermens' efforts to benefit itself while "sticking it" to Ames' other unsecured creditors.

(*Id.*). The Bankruptcy Court correctly concluded that "[t]he claims allowance process is another classic *in rem* function, appropriately handled by no court other than a bankruptcy court."[12] (Report 31). *See*, *e.g.*, *In re Danbury Square Assocs., Ltd. P'Ship*, 150 B.R. 544, 547 (Bankr. S.D.N.Y. 1993) ("Equitable subordination pursuant to 11 U.S.C. §510(c) is a bankruptcy remedy peculiar to the equitable jurisdiction of the bankruptcy court and cannot be severed from, and exist independently of, a lien or claim which will not be determined in the bankruptcy court."); *In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991) (same); *Logan v. Credit General Ins. Co. (In re PRS Ins. Group Inc.)*, 335 B.R. 77, 84 (Bankr. D. Del.

---

[12] Lumbermens appears to affirmatively endorse this position. *See* Obj. 31 (distinguishing *Gross* and *Tri-Valley* because there the insurance liquidators filed claims in federal court and then attempted to avoid that same jurisdiction on McCarran-Ferguson grounds).

2005) ("allowance and disallowance of claims, which are core matters . . . fall within the exclusive jurisdiction of the bankruptcy courts."). Lumbermens concedes this law,[13] but objects to this portion of the Bankruptcy Court's decision *solely* on the grounds that "there was no inequitable conduct by Lumbermens[.]" (Obj. 24). Again, this is obviously a merits issue, not a jurisdictional issue. Nor is there any argument advanced that the Illinois court could even hear such a claim.

### 4. Lumbermens' Proofs of Claim and Counterclaims

The Report also found that the Bankruptcy Court had core and exclusive jurisdiction over the proofs of claim filed by Lumbermens in the Ames' case and the counterclaims filed by Lumbermens in this action. (Report 31-32). *See*, *e.g.*, *PRS Ins. Group*, 335 B.R. at 81 ("the allowance of that claim and the amount to be distributed from the estate on that claim is the exclusive province of the bankruptcy court if a proof of claim has been filed in the bankruptcy court.").

Lumbermens agrees that the Bankruptcy Court "must rule on Lumbermens' claims against [the] estate," but argues that its claims against Ames should be stayed, presumably indefinitely, in favor of the Illinois insolvency proceedings because Lumbermens will agree to waive an affirmative recovery from the estate. (Obj. 24 n.78). Lumbermens provides no authority for its proposition that Ames should be so hindered from carrying out its obligations under the claims adjudication process. Further, notwithstanding that Lumbermens characterizes its claims against Ames as merely defensive (Obj. 14), the Bankruptcy Court still has core jurisdiction to hear those claims. (Report 21) *citing Langenkamp v. Culp*, 498 U.S. 42 (1990); (Report 41) (finding that Lumbermens "has expressly acknowledged that those claims are intertwined with Ames' claims with respect to the Bond Agreement and the Trust Monies.").

---

[13] "[Lumbermens] agrees that if such claim for equitable subordination is not dismissed on the merits, then it must stay with the federal court overseeing Ames' bankruptcy case." (Obj. 34, n.93).

5.   The Other Claims Asserted by Ames

In addition to the above-referenced claims, the Bankruptcy Court also analyzed the four remaining claims brought by Ames against Lumbermens.[14]   The Bankruptcy Court found that federal jurisdiction existed for each of these claims and that each of these claims represented "core" matters.  (Report 21, 23, 24, 28).  However, the Bankruptcy Court found that federal jurisdiction was not exclusive for these claims.  (*Id.*).

In ruling that the McCarran-Ferguson Act does not apply to the bulk of claims at issue, the Bankruptcy Court found that these claims will be adjudicated by a federal court as well.  However, the Bankruptcy Court explicitly held that Ames "will not be able to recover from Lumbermens on these claims other than through the rehabilitation proceeding."  (Report 41).  *See Gross*, 217 F.3d at 222.  As in *Gross*, Ames is able to pursue its claims against Lumbermens in this forum, and the resulting judgment would be presented in the state insolvency proceeding for a determination of the extent to which, if at all, Ames can recover against the insolvency estate.  *Gross*, 217 F.3d at 222.  While Lumbermens asserts no liability for these claims, the Objection does not address the Bankruptcy Court's conclusion that the claims can be liquidated here.

## II.   IN THE ALTERNATIVE, THE BANKRUPTCY COURT CORRECTLY RULED THAT THE FIRST-EXERCISING JURISDICTION DOCTRINE BARRED TRANSFERRING THIS CASE TO ILLINOIS

As a general matter, where there are two proceedings relating to the same matter, the first-filed proceeding takes priority.  *See*, *e.g.*, *N.Y. Marine and Gen. Ins. Co. v. LaFarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) ("The first-filed rule states that, in determining the proper venue, where there are two competing lawsuits, the first suit should have priority.") (quotation and citation omitted).  This rule has special effect where the first court has assumed jurisdiction over a *res*.  *See*

---

[14] *See* Report at 10-11 (breach of contract, breach of duty of good faith and fair dealing, unjust enrichment and declaratory judgment regarding the Trust Monies (two other causes of action were resolved earlier in the case)).

*Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939).  Hence, even if

McCarran-Ferguson did apply to reverse-preempt federal jurisdiction, the "First Assuming

Jurisdiction Doctrine" applies to preserve federal jurisdiction for Ames' *in rem* or *quasi in rem*

claims.  (Report 43-45).  The Bankruptcy Court found that this doctrine, first set forth by the

Supreme Court in *Princess Lida*, 305 U.S. at 466:

> states that although the general rule is that "state and federal courts
> would not interfere with or try to restrain each other's proceedings
> . . . [a]n exception has been made in cases where a court has custody
> of property, that is, proceedings in rem or quasi in rem."

(Report 43) *quoting Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964).  The Bankruptcy Court

found that this doctrine applied to Ames' claims for violation of the automatic stay, marshaling

and equitable subordination, as well as to Lumbermens' claims against Ames.  (Report 44).[15]

Each of those claims invoke the Bankruptcy Court's *in rem* jurisdiction over Ames'

bankruptcy estate:

> <u>Stay violation</u>:  "rests on section 362(a)(3) of the Bankruptcy Code,
> which proscribes interference with – or the destruction of – property
> of the estate (as alleged here, rights under the Bond Agreement, and
> cash collateral) which is subject to the *in rem* jurisdiction of the
> bankruptcy court, and which is to be used by a debtor to reorganize,
> to satisfy creditors' claims, or both." (Report 44) (footnote omitted).

> <u>Marshaling</u>:  "involves two types of estate property that
> unquestionably belonged to the Ames estate at the time of its chapter
> 11 filing—its bundle of rights under the Bond Agreement and its
> cash collateral.  The Court has *in rem* jurisdiction over each of them.
> And for reasons discussed above, that *in rem* jurisdiction extends to
> ancillary proceedings to protect them.  That is particularly true with
> respect to Ames' cash collateral, whose diversion from the Ames
> estate underlies [the] prayer for relief." (Report 44).

> <u>Equitable Subordination and Lumbermens' claims against Ames</u>:
> "likewise relate to the bankruptcy court's *in rem* jurisdiction—
> though there they relate to a different side of the court's *in rem*
> jurisdiction, the claims allowance process, in which claims to be

---

[15] The Bankruptcy Court found that the doctrine did not apply to Ames' other claims. (Report 43).

> satisfied by estate assets are allowed and disallowed, and the
> bankruptcy court determines creditors' competing priorities in
> realizing on the value of estate assets when necessary." (*Id.*)

Lumbermens argues that the claim for violation of the automatic stay is not really *in rem*

because Ames only seeks contempt damages from Lumbermens and that such damages are *in*

*personam*.   Nevertheless, Lumbermens makes no effort to distinguish (or even address) the

numerous Supreme Court decisions relied upon in the Report holding that the nature of a

bankruptcy court's jurisdiction is principally *in rem*, and all ancillary proceedings to protect that

the *res* of the debtor's estate, including through ancillary enforcement orders, are in furtherance of

that *in rem* jurisdiction.  *Katz,* 546 U.S. at 369-70 ("The Framers would have understood that laws

'on the subject of Bankruptcies' included laws providing, in certain limited respects, for more than

simple adjudications of rights in the res. . . . [C]ourts adjudicating disputes concerning bankrupts'

estates historically have had the power to issue ancillary orders enforcing their *in rem*

adjudications.") (citations omitted); *Whiting Pools*, 462 U.S. at 204-05 (describing breadth of

bankruptcy estate and debtors' rights to obtain possession of estate assets); *Student Assistance*

*Corp. v. Hood*, 541 U.S. 440, 448 (2004) ("A bankruptcy court's *in rem* jurisdiction permits it to

determine all claims that anyone, whether named in the action or not, has to the property or thing

in question. . . . [T]he [bankruptcy] court's jurisdiction is premised on the res. . . .") (quotation and

citation omitted).[16]  *See also*, *e.g.*, *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 972 (11th Cir.

2012) ("Because the bankruptcy court has exclusive jurisdiction over the debtor's estate, 28 U.S.C.

---

[16] *See also Adelphia Comm'ns Corp. v. The America Channel, LLC (In re Adelphia Comm'ns Corp.)*, 345 B.R. 69, 76
(Bankr. S.D.N.Y. 2006) ("Bankruptcy Code section 362(a)(3) protects the in rem jurisdiction of the Court, and
prohibits interference with the disposition of the assets that are under the Court's wing—whether or not the Debtor is
named as a defendant as part of the effort. And that is so without distinction as to the form the interference takes.");
*In re MCEG Productions, Inc.*, 133 B.R. 232, 234-35 (Bankr. C.D. Cal. 1991) ("Moreover, §362(a)(3) protects against
such acts to exercise control over property of the estate without distinction as to the form such interference takes.");
*Frankford Trust Co. v. Allanoff (In re Dublin Properties)*, 20 B.R. 616, 620 (Bankr. E.D. Pa. 1982) ("We find it
inconceivable to imagine that anyone familiar with the Bankruptcy Code could, in good faith, believe that the
automatic stay provisions of the Code do not prohibit a person from taking action in another court to eliminate a
property interest held by the estate."), *rev'd in part on other grounds*, 29 B.R. 407 (E.D. Pa. 1983).

§1334(e), the published notice [of the order] gives potential creditors sufficient 'contact' with the debtor's estate such that the court may properly enjoin those who are not present within the court's federal district consistent with Fifth Amendment due process.  That court, then, may properly sanction those without the district when their conduct violates or frustrates the court's injunctive orders.").

Moreover, Lumbermens fails to acknowledge the wide range of the remedies available for stay violations, which are not limited to damages and can include voiding the violative actions. *See*, *e.g.*, *In re Best Payphones, Inc.*, 279 B.R. 92, 97-98 (Bankr. S.D.N.Y. 2002) (finding that administrative determination issued post-petition in debtor's favor violated the automatic stay and accordingly was of no force or effect); *In re BNT Terminals, Inc.*, 125 B.R. 963, 973 (Bankr. N.D. Ill. 1990) (directing recipient of proceeds of sale of debtor's asset to disgorge such proceeds to the estate where sale violated the automatic stay).

Finally, Lumbermens argues without citation that the doctrine has no applicability to the McCarran-Ferguson Act.  Lumbermens argues that adopting this test would endorse a "race-to-the-courthouse" which in turn would "gut" the system of universal insurance insolvency jurisdiction.  (Obj. 34).  As discussed above, there is no such universal jurisdiction, no court has so held, and there is no *per se* rule that all disputes involving insolvent insurers must go to insolvency courts.  Second, there is no race-to-the-courthouse here:  (a) Ames brought this suit in 2006, six years before the commencement of Lumbermens' insolvency proceeding; (b) the Trust Monies have been frozen pursuant to a December 15, 2008 order of the Bankruptcy Court preventing their dispersal pending resolution of Ames' claims; (c) the case was trial ready in 2012 and an actual trial had been scheduled; (d) in July 2012, Lumbermens, not Ames, ran into state

court on a consent decree, consenting to the Illinois insolvency proceeding and consenting to the permissive injunction which purportedly enjoins this suit, all without notice to Ames.

The First Assuming Jurisdiction Doctrine, part of federal common law, preserves the common-sense notion that the court having the most experience with a dispute over the division of an asset – particularly an asset in the control of neither party – is the court that should finish its adjudication.[17]  *See*, *e.g.*, *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 102 (2d Cir. 1999) (holding that first court to assume control of *res* retained jurisdiction to the exclusion of other courts notwithstanding changes in parties during the pendency of the suit).  Absolutely nothing in Lumbermens papers suggests that the Illinois state court has any ability to adjudicate the primarily federal issues raised by this action, or that it makes any prudential sense to send the matter to that court.  If the exercise of federal jurisdiction – which *constitutionally* preempts concurrent state jurisdiction – can be curtailed by the First Assuming Jurisdiction Doctrine, surely the exercise of state jurisdiction – which only preempts concurrent federal jurisdiction pursuant to a statute – should be curtailed by the same prudential doctrine.   This Court, having withdrawn the reference, and in exercise of its bankruptcy jurisdiction, is the best forum for the speedy resolution of this dispute.

---

[17] Courts have consistently invoked "common-sense" when determining the extent of Congressional grants or limitations of federal jurisdiction.  *See*, *e.g.*, *Plains Comm. Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 337 (2008) ("it defies common sense to suppose that Congress meant to subject non-Indians to tribal jurisdiction"); *Sampson v. United Fed. of Teachers*, No. 89 CIV. 5357 (JFK), 1990 WL 48048, at *2 (S.D.N.Y. 1990) ("It confounds common sense to believe that Congress would expressly prohibit jurisdiction [under labor law but allow it under antitrust law]"); *U.S. ex rel. Ayala v. Tubman*, 366 F.Supp. 1268, 1269 (E.D.N.Y. 1973) ("A common-sense approach to the problem suggests that what Congress had in mind in its limited establishment of concurrent jurisdiction in adjoining waters").

## **CONCLUSION**

The Court should adopt the Report and set this case for a speedy resolution.

Dated:  New York, New York
   February 26, 2016

       /s/ Avery Samet
       Bijan Amini, Esq.
       Avery Samet, Esq.
       Jaime B. Leggett, Esq.
       STORCH AMINI & MUNVES PC
       2 Grand Central Tower
       140 East 45th Street, 25th Floor
       New York, New York 10017
       Telephone: (212) 490-4100
       Facsimile: (212) 490-4208

       -and-

       PROSKAUER ROSE LLP
       Martin J. Bienenstock, Esq.
       Timothy Q. Karcher, Esq.
       Eleven Times Square
       New York, New York 10036
       Telephone: (212) 969-3000
       Facsimile: (212) 969-2900

       *Attorneys for the Plaintiff and Debtor*